UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                         :
ASSURE GLOBAL, LLC,                                      :
                                                         :
                           Plaintiff,                    :
                                                         :
              -v-                                        :
                                                         :
AARON ANDERSON, ET AL.,                                  :
                                                         :
                           Defendants.                   :
                                                         :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  01/16/2025

21-cv-05785 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Assure Global, LLC d/b/a WeShield ("Plaintiff" or "Assure Global") brings this action against Defendants Aaron Anderson ("Anderson") and Axxeum, LLC ("Axxeum"), alleging breach of contract.  Dkt. No. 74.  Defendants have not filed an answer or taken any other action to respond to the operative complaint.  Plaintiff moves for default judgment pursuant to Federal Rule of Civil Procedure 55(b).  Dkt. No. 75.

For the following reasons, Plaintiff's motion for default judgment is granted with respect to liability and denied with respect to damages.

## BACKGROUND

For purposes of the motion for a default judgment, the Court assumes the truth of the well-pleaded allegations of the Second Amended Complaint ("Complaint" or "Compl.").  *See Granite State Ins. Co. v. GS Performance, LLC*, 2025 WL 19826, at *1 (S.D.N.Y. Jan. 2, 2025).  The Court also considers "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### A.     The Parties

Assure Global is a domestic limited liability corporation incorporated under New York state law and located in New York County.  Compl. ¶ 4.  Assure Global has five members: Michael Sinensky, Erika London, Amy Bove, Katharine Harris, and Roman Vintfeld.  *Id.* ¶ 5.  The members are domiciled in New York, New Jersey, Texas, and Puerto Rico, *id.* ¶¶ 2, 5.  Assure Global trades in personal protection equipment and conducts business under the name "WeShield."  *Id.* ¶¶ 4, 11.

Axxeum is a domestic limited liability corporation incorporated under Pennsylvania state law.  *Id.* ¶ 7.  Anderson is an individual domiciled in Pennsylvania.  *Id.* ¶ 6.  He is the sole member of Axxeum.  *Id.* ¶ 8.

### B.     The Agreement

On November 20, 2020, Sinensky of Assure Global messaged a Whatsapp groupchat regarding the purchase of 500,000 "Ammex 6 mil Thick Industrial Nitrile Gloves."  *Id.* ¶ 12; Dkt. No. 74–1 at 1.[1]  In addition to Sinensky, the groupchat included Anderson of Axxeum and a few other individuals affiliated with either Axxeum or Assure Global.  Dkt. No. 74–1.  Sinensky offered to pay 12.80 cents for each glove.  *Id.* at 1.  Anderson stated that he could not sell the gloves for that price and Sinensky responded that in that case, Assure Global would "pass."  *Id.*  Anderson replied that he would sell the gloves for 13 cents apiece and asked if Assure Global was still passing.  *Id.*

Sinensky responded later that day.  He messaged in the groupchat asking for 500,000 "Ammex 6 mil Thick Industrial Nitrile Gloves" at the price of 13 cents apiece and asked Anderson to send information for the purchase order.  *Id.*  Anderson replied with an address and Axxeum's bank information.  *Id.*  A purchase order dated November 20, 2020 memorialized the order for

---

[1] Citations to this document refer to the pagination in the ECF heading.

500,000 black "Ammex 6 mil Thick Industrial Nitrile Gloves."  Compl. ¶ 13; Dkt. No. 74–2 ("Purchase Order").  The Purchase Order specifies the quantities of each glove size to be delivered and states a price of thirteen cents per glove for a total of $65,000.00.  Dkt. No. 74–2.  In the groupchat, Sinensky also asked for an invoice to make the deposit.  Dkt. No. 74–1 at 1.  Axxeum sent Assure Global an invoice for the "500 Cases of black nitrile" for the total price of $65,000. Compl. ¶ 14; Dkt. No. 74–3.

On November 23, 2020, Sinensky confirmed that the purchase was "happening" and stated that he was waiting for the funds to clear so that Assure Global could make the purchase.  Dkt. No. 74–1 at 1.  On November 24, 2020, Assure Global wired $65,000 to Axxeum .  Compl. ¶ 15; Dkt. No. 74–4. On November 30, 2020, Whitehorse Freight shipped an order to Assure Global's designated warehouse.  Compl. ¶ 17.

### C.    Problems with the Shipment

On November 30, 2020, Sinensky messaged the groupchat that there was a "big problem with the most recent order."  Dkt. No. 74–1 at 2.  Sinensky stated that the shipment was missing 160,000 gloves and that not all of the gloves Assure Global had received were six millimeters thick.    Compl.  ¶¶ 18–20;  Dkt. No. 74-1  at 2–3.    Another  member  of  the  groupchat,  Joe D'Annunzio, stated that the warehouse sent pictures showing three cases were "damaged beyond what is acceptable to sell."  Dkt. No. 74–1 at 3.

Sinensky initially proposed that Assure Global would return everything except for the gloves that were 6 milliliters thick and the "Aurelia" gloves.  *Id.*  However, on December 1, 2020, D'Annunzio messaged: "We had the warehouse stay late last night on overtime to confirm these counts and the products.  None of these gloves are 6 mil like we thought they would be.  We would like return everything and keep the aurelia robusts since they went out."  *Id.*

Anderson messaged that he had previously sent Assure Global a spec sheet and "the black nitrile is what you were buying, anything other than that was a mix up." *Id.* Sinensky responded "Negative - the black nitrile isn't 6 mil" and that Assure Global had purchased the gloves because they were marketed as six millimeters thick." *Id.* Anderson stated "[t]his is what you agreed to buying" and Sinensky again responded that the gloves were "not what you said there were as you said 6 mil." *Id.* Sinensky messaged that Assure Global would keep the gloves that had been shipped. *Id.* Anderson stated that he would ship the remaining 160,000 gloves. *Id.*

Assure Global followed up several times over the following weeks requesting shipment of the missing gloves. *Id.* at 3–10. On December 8, 2020, Sinensky requested a refund of $20,800 for the missing gloves. *Id.* at 7–8; Compl. ¶ 27. Two days later, Sinensky messaged Anderson asking for an update on the refund or replacement of the missing gloves. Dkt. No. 74-4 at 8. Anderson responded that he was waiting for someone to send him the gloves. *Id.* On December 11, 2020, Sinensky stated that if Assure Global did not receive the gloves that day, he wanted a refund instead. *Id.* Anderson continued to promise that that the missing gloves were forthcoming but Assure Global never received the gloves or a refund. *Id.* at 8–11; Compl. ¶ 34. Assure Global was ultimately able to sell only $7,498.37 of the gloves it received from Axxeum. *Id.* ¶ 37.

## PROCEDURAL HISTORY

Plaintiff commenced this action by filing a complaint on July 6, 2021. Dkt. No. 1.

On October 5, 2021, Plaintiff filed its first motion for default judgment against Anderson and Axxeum. Dkt. No. 25.[2] The Court denied that motion as moot on June 2, 2022, due to Plaintiff's failure to plead diversity jurisdiction and granted Plaintiff leave to file an amended complaint. Dkt. Nos. 30, 32. Plaintiff filed an amended complaint on June 3, 2022. Dkt. No. 33.

---

[2] Assure Global attempted to file the default judgment motion on October 4, 2021, but the filing was rejected due to a filing error. Dkt. No. 24.

On April 20, 2023, Assure Global filed a second motion for default judgment against Anderson and Axxeum.  Dkt. No. 44.  The Court held a hearing on the second default judgment motion on June 8, 2023.  Dkt. No. 50 at 1.  As memorialized in an order dated June 13, 2023, the Court stated at the hearing that the amended complaint and relevant facts "support a default judgment as to the contract claim against Axxeum but d[o] not support Plaintiff's request for an entry of default against Anderson on the contract claim based on an alter ego theory of liability." *Id.*  The Court accordingly found default judgment premature at that time.  *Id.*  On December 19, 2023, Plaintiff moved for leave to amend the complaint again.  Dkt. No. 69.  The Court granted the motion on February 15, 2024.  Dkt. No. 72.  Plaintiff filed the Second Amended Complaint on February 16, 2024.  Dkt. No. 74.

Assure Global filed the instant motion for default judgment on August 1, 2024.  Dkt. No. 75.  In support of the motion for default judgment, Plaintiff filed a declaration and a memorandum of law.  Dkt. Nos. 76–77.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment.  *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see* Fed. R. Civ. P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings.  *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b).  Whether entry of default judgment at the second step is

appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law. *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because the defaulting party does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." *Id.* (citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, this Court is "required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Grp. Ltd v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). A default judgment entered on well-pleaded allegations does not reach the issue of damages, and a plaintiff "must therefore substantiate [her] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd* 691 F. App'x 8 (2d Cir. 2017).

## JURISDICTION

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Diversity jurisdiction requires (1) "complete diversity" among the parties, meaning "each plaintiff's citizenship must be different from the citizenship of each defendant," *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009); and (2) an amount in controversy in excess of $75,000, i.e., that there

exists a "reasonable probability" that the claims are in excess of the sum or value of $75,000, *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006).    A limited liability corporation adopts the citizenship of its members.  *See Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012).    The parties are completely diverse because Assure Global's members are domiciled in New York, New Jersey, Texas, and Puerto Rico, Compl. ¶¶ 2, 5, while  Anderson (who is the sole member of Axxeum) is domiciled in Pennsylvania, *id.* ¶¶ 6, 8.  Plaintiff requests $94,317.43, Dkt. No. 76 ¶ 62, exceeding the minimum $75,000 amount in controversy threshold.  Plaintiff has adequately established there is federal subject matter jurisdiction.

## DISCUSSION

Plaintiff asks the Court to enter a default judgment finding Defendants liable for breach of contract and awarding it damages.  Dkt. No. 76.

## I.    Breach of Contract

"Because the transaction between the parties involved the sale of goods, it is governed by Article 2 of the [New York Uniform Commercial Code]" *J-Up Int'l Co. v. Brooks Fitch Apparel Grp., LLC*, 2012 WL 5713727, at *2 (S.D.N.Y. Nov. 7, 2012) (citing N.Y. U.C.C. § 2–102; *Long Island Lighting Co. v. Imo Indus. Inc.*, 6 F.3d 876, 887–88 (2d Cir. 1993)).    "To prevail on a breach-of-contract claim in New York, a plaintiff must prove: '(1) the existence of a contract, (2) performance by the party seeking recovery, (3) nonperformance by the other party, and (4) damages attributable to the breach.'"  *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 85 (2d Cir. 2021) (quoting *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC*, 156 Fed. App'x 349, 350–51 (2d Cir. 2005)).  In addition, "New York law and the Twombly-Iqbal standards of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a

defendant has breached." *Spinelli v. NFL*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015). The Complaint satisfies each requirement.

"To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound[.]" *Zhu Jun v. Bank of Am., N.A.*, 2024 WL 5135381, at *7 (2d Cir. Dec. 17, 2024) (quoting *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121 (1st Dep't 2009) (citing 22 N.Y. Jur. 2d, Contracts § 9)); *accord Wu v. Uber Techs., Inc.*, 2024 N.Y. Slip Op. 05869, at *5 (N.Y. Nov. 25, 2024). In addition, Plaintiff must also plead "the pertinent terms of the purported agreement." *Elastic Wonder, Inc. v. Posey*, 2015 WL 273691, at *6 (S.D.N.Y. Jan. 22, 2015) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011)); *accord Belsito Commc'ns, Inc. v. Dell, Inc.*, 2013 WL 4860585, at *5 (S.D.N.Y. Sept. 12, 2013).

Plaintiff adequately establishes the existence of a contract between itself and Axxeum. When, on November 20, 2020, Sinensky messaged Anderson that he was interested in purchasing 500,000 "Ammex 6 mil Thick Industrial Nitrile Gloves" at thirteen cents apiece, Dkt. No. 74–1 at 1, Assure Global made "a sufficiently definite offer such that its unequivocal acceptance will give rise to an enforceable contract," *Kolchins v. Evolution Mkts., Inc.*, 96 N.E.3d 784, 106 (N.Y. 2018) (citation omitted). It subsequently committed that offer to writing in the form of the Purchase Order again stating the number of gloves, the price per glove, and the thickness of the gloves, and additionally stating the amount of each size glove desired. Dkt. No. 74-2. Anderson accepted that offer without counteroffering any alternative terms when he provided the address for the Purchase Order and Axxeum's bank account information, Dkt. No. 74–1 at 1, and then sent an invoice from Axxeum to Assure Global with terms matching those in the Purchase Order, Dkt. No. 74 ¶ 14; Dkt. No. 74–3. *See Egnotovich v. Katten Muchin Zavis & Roseman LLP*, 866 N.Y.S.2d 156, 158

(1st Dep't 2008) ("transfer instructions, which accompanied each and every invoice to defendant, provided sufficient evidence of the venture's intent to be bound by them"); *Ostojic v. Life Med. Techs., Inc.*, 162 N.Y.S.3d 27, 29 (2d Dep't 2022) ("[A] contract is created at the moment that there is acceptance of the offer, and in order for an acceptance to be effective, it must comply with the terms of the offer and be clear, unambiguous, and unequivocal.").  The fact that the invoice was less detailed than the purchase order or the parties' previous communications specifying the thickness or size of the gloves is of no moment as Axxeum did not indicate that acceptance was predicated upon an alternative delivery of goods than had previously been negotiated.  *See* N.Y. U.C.C. § 2-207; *Stemcor USA, Inc. v. Trident Steel Corp.*, 471 F. Supp. 2d 362, 366 (S.D.N.Y. 2006) (explaining that under N.Y. U.C.C. § 2-207, a seller's response to a buyer's purchase order "normally constitutes a definite and seasonable expression of acceptance if it repeats the terms of the buyer's order and if the seller's response does not state that acceptance is expressly made conditional on the buyer's assent to additional terms the seller included, that response operates as an acceptance and a contract is formed" (citation omitted)); *see generally Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219 (2d Cir. 2000).   Consideration supports the agreement in the form of Plaintiff's $65,000 wire in exchange for Axxeum's gloves.  *See Potamkin New York, LP v. Gem Auto Brokers Inc.*, 2012 WL 1898896, at *3 (S.D.N.Y. May 1, 2012), *report and recommendation adopted*, 2012 WL 1870949 (S.D.N.Y. May 23, 2012); *see also* Official Comments to N.Y. U.C.C. § 3-408 ("'Consideration' refers to what the obligor has received for his obligation").

The terms of the contract were  also "sufficiently certain and specific so that what was promised can be ascertained." *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 417 N.E.2d 541, 543 (N.Y. 1981).  "In a contract for a sale of goods, the essential terms are quantity, price,

and time and manner of delivery." *Key Items, Inc. v. Ultima Diamonds, Inc.*, 2010 WL 3291582, at *6 (S.D.N.Y. Aug. 17, 2010) (citation omitted).  In exchange for $65,000, Axxeum was to deliver 500,000 black, 6-millimeter-thick industrial nitrile gloves in various sizes.  Dkt. No. 74-2.  Although the time of delivery was unspecified until a few days later, "[t]he fact that one or more terms are left open is not fatal, because 'a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.'" *Fakhoury Enterprises, Inc. v. J.T. Distributors*, 1997 WL 291961, at *3 (S.D.N.Y. June 2, 1997) (quoting N.Y. U.C.C. § 2–204(3)); *see also Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 491–92 (S.D.N.Y. 2022) ('[I]t is not required that every one of [a contract's] terms be fixed with complete certainty for [it] to have legal efficacy" (citation omitted)).  That omission at the time of contracting does not manifest a lack of intention to form a contract, and therefore does not defeat Plaintiff's showing that an enforceable contract existed.

Assure Global's allegations and exhibits to the Complaint showing that it paid Axxeum the $65,000 establish its own performance.  Compl. ¶ 15; Dkt. No. 74-4; *see Careandwear II, Inc. v. Nexcha LLC*, 581 F. Supp. 3d 553, 557 (S.D.N.Y. 2022) ("Care+Wear fully performed under the contracts by paying for the gloves the days the purchase orders were executed").

Plaintiff sufficiently establishes Axxeum's nonperformance.  A party may breach a contract by, *inter alia*, delivering non-conforming goods or fewer goods than agreed upon. *See id.* (finding that the defendant breached the purchase order because "Nexcha never delivered any of the nitrile gloves and shorted its delivery of vinyl gloves by 2,000 gloves, which were not delivered until a week after the agreed . . . shipment date"); *Mattleson v. Boyle*, 133 F. App'x 761, 762 (2d Cir. 2005) (summary order); N.Y. U.C.C. § 2-601.  Assure Global alleges that Axxeum breached

by shipping thinner gloves than the contract specified as well as by shipping 340,000 gloves instead of 500,000 gloves. Compl. ¶¶ 18–20, 35–36. Plaintiff also pleads damages stemming from Axxeum's nonperformance in the form of the missing gloves and the non-conforming gloves. *See CareandWear II*, 581 F. Supp. 3d at 557.

Although Plaintiff later stated that it would keep the non-conforming gloves and ultimately resold at least some, Dkt. No. 74-1 at 4; Compl. ¶ 37, Plaintiff may still sue for the nonconforming nature of the gloves, *see Rienzi & Sons, Inc. v. I Buonatavola Sini S.R.L*, 2021 WL 5013795, at *5 (E.D.N.Y. Oct. 28, 2021). Pursuant to the New York Uniform Commercial Code, "[a]cceptance of goods occurs when the buyer: (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or (b) fails to make an effective rejection ... [after] the buyer has had a reasonable opportunity to inspect them; or (c) does any act inconsistent with the seller's ownership." *Id.* (quoting N.Y. U.C.C. § 2-606). Plaintiff's resale is inconsistent with Axxeum's ownership, but the New York Uniform Commercial Code "specifies that 'acceptance does not of itself impair any other remedy provided by this Article for non-conformity,' and stipulates that a 'buyer [that] has accepted goods . . . may recover . . . damages for any non-conformity of tender.'" *Id.* (quoting N.Y. U.C.C. §§ 2-607(2), 2-714(1)).

Plaintiff's motion for default judgment is granted as to Axxeum's liability for breach of contract.

## II.    Piercing the Corporate Veil

In addition to holding Axxeum liable for the breach of contract, Assure Global also seeks to hold Anderson liable by piercing the corporate veil. On a motion for default judgment, a district court may pierce the corporate veil to hold an individual liable for corporate action. *See Dow*

*Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 342 (2d Cir. 1986); *Badian v. Elliott*, 165 F. App'x 886, 889 (2d Cir. 2006).

In diversity cases, district courts "apply the choice of law rules of the forum state—in this case New York—to determine what law governs alter ego or piercing the corporate veil analysis." *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 15 (2d Cir. 2014) (summary order) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997)). "New York choice of law rules provide that generally 'the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders.'" *Id.* (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). Because Axxeum is a Pennsylvania corporation, Compl. ¶ 7, Pennsylvania law applies.

Pennsylvania recognizes a "strong presumption . . . against piercing the corporate veil." *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Penn. 1995) (citation omitted); *see Mitchell v. CJKant Res. Grp., LLC*, 2021 WL 5980049, at *3 (E.D. Pa. Dec. 17, 2021). "[A]ny court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." *Wedner v. Unemployment Comp. Bd. of Rev.*, 296 A.2d 792, 795 (Penn. 1972). However, as a matter of equity, a court may pierce the corporate veil, thereby disregarding the corporate form "whenever justice or public policy demand[,] such as when the corporate form has been used to defeat public convenience, justify wrong, protect fraud, or defend crime." *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1034–35 (Penn. 2018) (citations omitted). Factors relevant to the piercing inquiry include the corporation's "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs[,] and use of the corporate form to perpetrate a fraud." *Mortimer v. McCool*, 255 A.3d 261, 268 (Penn. 2021) (quoting *Lumax*,

669 A.2d at 895); *see also id.* at 286 ("Unlike some jurisdictions, Pennsylvania has resisted the temptation to formalize the inquiry with an ever-increasing number of predefined factors embodying the many considerations that might aid in determining whether the corporate form has been abused").

Pennsylvania courts have held that breach of contract is one such wrong that may give rise to veil piercing. *See Cheatle v. Katz*, 2003 WL 21250583, at *6–7 (E.D. Pa. Apr. 1, 2003); *Mitchell v. CJKant Res. Grp., LLC*, 2021 WL 5980049, at *4 (E.D. Pa. Dec. 17, 2021). The pertinent question therefore becomes whether Plaintiff adequately alleges that Axxeum's corporation is little more than a legal fiction. Plaintiff alleges that Anderson was the sole member and sole director of Axxeum, and that he "made all the decisions" on Axxeum's behalf "including the decision to cease communications with Plaintiff" and decision "regarding the transactions that are the subject matter of this lawsuit." Compl. ¶¶ 94–95, 98. Plaintiff also alleges—albeit in conclusory terms—that Axxeum, "was never adequately capitalized to engage in the business for which it was formed" and that "it was undercapitalized with the intent of avoiding obligations bound to arise as a result of its operations." *Id.* ¶¶ 99–100; *see J.B. Hunt Transp., Inc. v. Liverpool Trucking Co.*, 2013 WL 3208586, at *3 (M.D. Pa. June 24, 2013).[3] Such allegations are consistent with Sinensky's statement in the groupchat that "[i]t's obvious [Anderson] is using money from present deals to fund deals he shorts," Dkt. No. 74-1 at 11. Furthermore, as detailed above, Plaintiff establishes Anderson's own extensive involvement in negotiating and only partially performing the contract.

---

[3] Plaintiff also alleges that Anderson "did not deal at an arm's length with the other companies located at the same address as Axxeum" and "did not treat Axxeum[] as an independent profit center." Compl. ¶¶ 102–103. However, these conclusory statements are devoid of the supporting factual allegations that are necessary to make them anything more than mere recitations of the legal standard. *See Robbins v. Candy Digital Inc.*, 2024 WL 5056429, at *22 (S.D.N.Y. Dec. 9, 2024).

*See generally id.*.  These allegations, taken as true, suffice to pierce the corporate veil.  *See Cheatle*, 2003 WL 21250583, at *6–7 ("Plaintiffs point to [controlling individual's] participation in the negotiations process and his role in [unsatisfactorily performing under the contract].  Taking Plaintiffs' allegations as true, the Court finds that they have set forth facts sufficient to make out a claim for application of the doctrine of piercing the corporate veil."); *Vill. at Camelback Prop. Owners Assn. Inc. v. Carr*, 538 A.2d 528, 536 (Penn. Super. 1988) (plaintiff adequately pleaded that the corporate veil should be pierced where "reading the complaint as a whole, it appears clear that appellant asserts that [the individual defendant] was the sole moving force behind all of the corporate defendants and was directly involved in all of their actions pertinent to this dispute"), *aff'd sub nom. Vill. at Camelback Prop. Owners Ass'n, Inc. v. Carr*, 572 A.2d 1 (Penn. 1990). Though evidence may exist rebutting Plaintiff's ability to hold Anderson individually liable, "the defendants have elected not to participate in the discovery process that would resolve this question" and Plaintiff's pleadings suffice.  *ASD Specialty Healthcare, Inc. v. New Life Home Care, Inc.*, 2013 WL 1482777, at *4 (M.D. Pa. Apr. 10, 2013); *see also McGovern v. Jack D's, Inc.*, 2004 WL 228667, at *4 (E.D. Pa. Feb. 3, 2004); *Meshkov v. Unum Provident Corp.*, 209 F. Supp. 2d 459, 461 (E.D. Pa. 2002).

Plaintiff establishes Anderson's individual liability for breach of contract.

## III.    Damages

Although "a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  Rather, the plaintiff "bears the burden of establishing her entitlement to recovery and thus must substantiate her claim with evidence to prove the extent of damages."  *Dunn v. Advanced Credit Recovery Inc.*, 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012), *report and recommendation adopted*, 2012 WL 1114335

(S.D.N.Y. Apr. 3, 2012); *see HTV Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 717 (S.D.N.Y. 2018) (noting that a plaintiff must "substantiate its claim with sufficient evidence to prove its damages with reasonable certainty"). "Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Greyhound Exhibitgroup*, 973 F.2d at 158 (2d Cir. 1992). Nonetheless, "[a] plaintiff may submit documentary evidence or detailed affidavits to support their damages claim." *Mulligan Funding, LLC v. Tommy Interior Contracting Corp.*, 2024 WL 4749463, at *10 (E.D.N.Y. Nov. 11, 2024). "If the documents the plaintiff has submitted provide a 'sufficient basis from which to evaluate the fairness of' the requested damages, the Court need not conduct an evidentiary hearing." *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Prime Contractors Inc.*, 2024 WL 5048318, at *4 (S.D.N.Y. Nov. 18, 2024) (quoting *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

"Under New York law, damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." *LG Cap. Funding, LLC v. Cardiogenics Holdings, Inc.*, 787 F. App'x 2, 3 (2d Cir. 2019) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003)); *see also Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 261 (S.D.N.Y. 2005) (damages for breach of contract may not "put the non-breaching party in a *better* financial position than they would have occupied but for the breach"). "It is well settled that in breach of contract actions the nonbreaching party may recover general damages which are the natural and probable consequence of the breach." *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*, 886 N.E.2d 127, 130 (N.Y 2008) (citation

omitted). "Special, or consequential damages, which do not so directly flow from the breach, are also recoverable in limited circumstances." (citation omitted).

Plaintiff's counsel submitted a declaration stating that Plaintiff is entitled to a total of $94,317.43 in damages and providing some support for that calculation. Dkt. No. 76. The declaration states that Plaintiff incurred $87,871.63 in underlying damages, which consists of:

(i)     $57,501.63 paid by Plaintiff to Defendants for merchandise not received;

(ii)    $28,800, which represents 160,000 units Plaintiff never received from Defendants that Plaintiff had to replace and sell at a lower profit margin;

(iii)   $720 in overtime labor as a result of the warehouse investigation of the missing and defective items; [and]

(iv)    $850 in additional third party shipping costs as a result of the of the missing and defective items.

*Id.* ¶ 62. In addition to those sums, Plaintiff seeks damages for its filing fee costs of $402.00, its service of process costs of $835.80, and attorney's fees of $5,208. *Id.*

The bulk of Plaintiff's damages claim is legally deficient. Where "a buyer has accepted nonconforming goods, damages equal to the difference between the value of the goods accepted and the value of the goods as warranted is an appropriate remedy under the UCC." *B. Milligan Contracting Inc. v. Andrew R. Mancini Assocs. Inc.*, 578 N.Y.S.2d 931, 933 (3d Dep't 1992) (citing N.Y. U.C.C. § 2-714(2)); *accord Philips Consumer Elecs. Co. v. Arrow Carrier Corp.*, 785 F. Supp. 436, 440 (S.D.N.Y. 1992) ("The traditional measure of 'actual loss' is the difference between the market value of the property if it had been delivered according to the contract specifications and the market value of the non-conforming goods.") (collecting cases), *aff'd sub nom. Philips Consumer v. Arrow Carrier Corp.*, 999 F.2d 537 (2d Cir. 1993). Instead of following this formulation, Plaintiff seems to assert it should receive back the full price it paid for all of the gloves it did not receive and of the inferior gloves it received and failed to resell, without

accounting for any of the value of the inferior gloves it accepted but failed to resell. Indeed, Plaintiff advances no evidence at all as to the market values of either the 5-millimeter-thick gloves it received or the six-millimeter gloves for which it contracted.

Plaintiff's damages calculation is also mathematically deficient as Plaintiff double-counts the $20,800 it paid for the 160,000 gloves it never received. Plaintiff claims that it "covered" the missing gloves by ordering them from another vendor for 18 cents per glove. *Id.* ¶ 55. Pursuant to the New York Uniform Commercial Code, "[t]he buyer may recover from the seller as damages the difference between the cost of cover and the contract price." N.Y. U.C.C. § 2-712. The five-cent difference between Axxeum's price and the other vendor's price would entitle Plaintiff to recover $8000, not $28,800. The additional $20,800 presumably represents the total amount Plaintiff paid Axxeum for the undelivered gloves. However, that $20,800 is already part of the $57,501.63 figure Plaintiff seeks as compensation representing the $65,000 Plaintiff paid less the $7,498.37 worth of gloves Plaintiff was able to resell. Dkt. No. 76. ¶ 54.

Plaintiff's legal costs are also suspect. "Under the 'American Rule' a prevailing party is ordinarily not entitled to attorneys' fees except where expressly provided by statute or contract." *Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 227 (S.D.N.Y. 2005). Plaintiff does not point to any statute permitting recovery and absent a contractual provision stating otherwise, "it is well-established that a party cannot recover attorney's fees from a contract-breaching opponent, even where the breach makes litigation eminently foreseeable." *Brown Rudnick, LLP v. Surgical Orthomedics, Inc.*, 2014 WL 3439620, at *14 (S.D.N.Y. July 15, 2014).

Plaintiff's damages submissions do not allow the Court to calculate damages with reasonable certainty. Plaintiff's motion for default judgement is denied with respect to damages. The case will be referred to Magistrate Judge Sarah L. Cave for an inquest on damages.

**CONCLUSION**

Plaintiff's motion for default judgment is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. No. 75.

SO ORDERED.

Dated: January 16, 2025
       New York, New York                    _____
                                                      LEWIS J. LIMAN
                                                 United States District Judge