UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ASSURE GLOBAL, LLC d/b/a WESHIELD,

                Plaintiff,

-v-

AARON ANDERSON and AXXEUM, LLC,

                Defendants.

CIVIL ACTION NO. 21 Civ. 5785 (LJL) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE LEWIS J. LIMAN**, United States District Judge:

## I. INTRODUCTION

Plaintiff Assure Global, LLC d/b/a WeShield ("Assure") alleges that Defendants Aaron Anderson ("Mr. Anderson") and Axxeum, LLC ("Axxeum," with Mr. Anderson, "Defendants") breached a contract to sell Assure nitrile gloves of a particular thickness and quality. (See ECF Nos. 1 (the "Complaint"); 33 (the "FAC"); 74 (the "SAC")). Defendants failed to answer, move against, or otherwise oppose any of the Complaint, FAC, or SAC, and efforts to settle the case were unsuccessful. (See ECF Nos. 66–68). Accordingly, on August 1, 2024, Assure moved for default judgment (ECF Nos. 75–77), which the Honorable Lewis J. Liman granted on January 16, 2025 as to liability and denied with respect to damages. (ECF No. 81 (the "Jan. 16 Order")). See Assure Global, LLC v. Anderson, 763 F. Supp. 3d 476 (S.D.N.Y. Jan. 16, 2025). Following his issuance of the Jan. 16 Order, Judge Liman referred this matter to the undersigned for settlement and an inquest as to damages. (See ECF No. 82).

At the Court's direction (see ECF No. 84), Assure filed Proposed Findings of Fact and Conclusions of Law (ECF No. 85 (the "Proposed Findings")), supported by a declaration from Amy Bove, a principal of Assure (ECF No. 85-1 (the "Bove Declaration")); a screenshot of the docket, showing that Assure paid a $402.00 filing fee (ECF No. 85-2 (the "Filing Fee Receipt")); invoices showing the prices Assure paid for service of process (ECF Nos. 85-3 – 85-4 (the "Invoices")); and attorney billing records (ECF No. 85-5 (the "Billing Records," with the Proposed Findings, Bove Declaration, the Filing Fee Receipt, the Invoices, and the Billing Records, the "Damages Submission")). (ECF Nos. 85; 85-1 – 85-4). At the Court's direction due to deficiencies in the Damages Submission, Assure also filed a supplemental declaration from Amy Bove (the "Second Bove Declaration") (ECF No. 90) attempting—unsuccessfully, as we explain below—to correct the deficiencies the Court had identified.

Having reviewed the Damages Submission and the Second Bove Declaration, and for the reasons set forth below, we respectfully recommend that no damages be awarded, but that Assure recover costs in the amount of $1,108.10.

## II. BACKGROUND

Judge Liman summarized the factual and procedural background in the Jan. 16 Order, so we provide only the background necessary for the inquest on damages. See Assure Global, 763 F. Supp. 3d at 480–82.

### A. Factual Background

#### 1. The Parties

Assure is a New York limited liability corporation that "trades in personal protection equipment." (ECF Nos. 74 ¶¶ 4, 11; 85-1 ¶ 5). It has five members: Michael Sinensky ("Mr.

2

Sinensky"), Erika London, Amy Bove, Katharine Harris, and Roman Vintfeld. (ECF No. 74 ¶ 5). Axxeum—whose sole member is Mr. Anderson—is a Pennsylvania limited liability corporation. (ECF No. 74 ¶¶ 7–8).

### 2. The Agreement

On November 20, 2020, in a WhatsApp group chat including Mr. Anderson (the "Group Chat"), Mr. Sinensky solicited "five hundred thousand Ammex 6 mil Thick Industrial Nitrile Gloves." (ECF No. 85-1 ¶ 5). In response, Mr. Anderson provided an address and Axxeum's bank information. (ECF No. 74-1 at 1). Assure then generated a purchase order that specified the quantities of each glove size to be purchased, listing a price of thirteen cents per glove, for a total of $65,000.00. (ECF No. 74-2). Axxeum then sent Assure an invoice for "500 Cases of black nitrile [gloves]" for the same price (ECF No. 74-3), after which Assure wired Axxeum the $65,000.00. (ECF No. 74-4).

Mr. Sinensky then directed Jared Paul, an apparent associate or employee of Assure, to arrange transport of the gloves from Defendants' warehouse to Assure. (ECF No. 74-1 at 2). Behind the scenes, Mr. Paul contacted Whitehorse Freight, a shipping company, which agreed to pick up and deliver the gloves for $850.00. (See ECF No. 74-7 at 2). This shipment was memorialized in an invoice (ECF No. 74-7 at 1) and a bill of lading (ECF No. 74-5), each dated November 25, 2020, which was the date on which the shipment occurred.

### 3. Problems with the Shipment

On November 30, 2020, Assure provided Mr. Anderson an accounting of the items in the shipment, which was missing 160,000 gloves. (ECF No. 85-1 ¶¶ 11–12). Assure "had the warehouse stay late" on the night of November 30, 2020, "to confirm these counts and the

products" and, subsequently informed Mr. Anderson that "[n]one of the[] gloves [we]re 6 mil like [they expected]." (Id. ¶ 13). Assure then told Mr. Anderson that they wanted to "return everything [except] the aurelia robusts[,]" which already "went out." (Id.) After a back and forth, however, Mr. Sinensky agreed to keep the gloves as delivered (ECF No. 74-1 at 3), and Mr. Anderson agreed to ship the missing 160,000 gloves. (Id.) In the following weeks, Assure repeatedly followed up with Mr. Anderson, who failed to ship the missing gloves, so Assure requested a refund of the $20,800.00 it had paid for them. (See ECF No. 74-1 at 3–10). Assure did not receive its requested refund (id. at 8–11), and resold only $7,498.37 of the non-conforming gloves it received from Axxeum. (ECF No. 74 ¶ 37).

B. **Procedural Background**[1]

On February 16, 2025, Assure filed the SAC, seeking to pierce Axxeum's corporate veil and raising claims for breach of contract, breach of the covenant of good faith and fair dealing, fraud, unjust enrichment, and conversion. (ECF No. 74 at 6–13). On August 1, 2024, Assure filed the Third MDJ (ECF No. 75), which Judge Liman granted as to liability but denied as to damages. See Assure Global, 763 F. Supp. 3d at 488–90. As to the latter issue, he found that "[t]he bulk of [Assure's] damages claim [was] legally deficient" and identified three specific defects:

1. An improper claim that Assure "should receive back the full price it paid for all of the gloves it did not receive and of the inferior gloves it received and failed to resell, without accounting for any of the value of the inferior gloves it accepted but failed to resell."

---

[1] A full recitation of this case's procedural history is not necessary to perform the damages inquest. We therefore focus only on the orders and submissions most relevant to the inquest, such as the filing of the SAC and Third Motion for Default Judgment ("MDJ").

4

2. Double counting of "the $20,800 [Assure] paid for the 160,000 gloves it never received."

3. Requesting attorneys' fees without identifying any statute or contractual provision permitting recovery.

Id. at 489-90 (the "Damages Defects").  Concluding that Assure's submissions "d[id] not allow [him] to calculate damages with reasonable certainty" (id.), Judge Liman referred the matter to the undersigned for settlement and to conduct an inquest.  (ECF No. 82).

Because the order of reference included settlement, on January 31, 2025, the undersigned scheduled and held a telephonic conference regarding settlement (the "Jan. 31 Conference").  (See ECF No. 83; ECF min. entry Jan. 31, 2025).  Assure appeared at the Jan. 31 Conference, but Defendants did not.  (See ECF min. entry Jan. 31, 2025).  Accordingly, the same day, the Court issued a scheduling order directing Assure to file the Damages Submission.  (ECF No. 84).  In the Order, we cited the portion of the Jan. 16 Order that identified the Damages Defects and reminded Assure that it must "support all factual assertions by affidavit and/or other evidentiary material."  (Id. at 1).

On February 27, 2025, Assure filed the Damages Submission (ECF No. 85), which the Court reviewed on May 1, 2025 and found to be deficient both in its legal analysis and factual support.  (See ECF No. 89).  We ordered Assure to file a supplement to the Damages Submission by May 16, 2025, in response to which Assure filed the Second Bove Declaration.  (See ECF No. 90).  The Second Bove Declaration is substantially similar to the Bove Declaration, adding only the names of the vendors and the date of the "cover" purchase (id. ¶ 22), as well as the statement that none

of Assure's customers were interested in, and there was no demand for, 5 mil gloves. (See id. ¶ 30).

Defendants, despite being served, have not responded to the Damages Submission nor the Second Bove Declaration, or otherwise contacted the Court, meaning Assure's request is ready for consideration and may be decided on the Damages Submission and Second Bove Declaration alone.

### III. DISCUSSION

#### A. Legal Standards

As Judge Liman explained in the Jan. 16 Order, "Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment." Assure Global, 763 F. Supp. 3d at 483 (citing New York v. Green, 420 F.3d 99. 104 (2d Cir. 2005)). Here, the Clerk of Court has entered certificates of default against Defendants (ECF Nos. 20–21), and Judge Liman has determined that they are liable to Assure for breaching the contract for the gloves. Assure Global, 763 F. Supp. 3d at 484–88.

Once liability has been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Getty Images (US) Inc. v. Advernet, Inc., 797 F. Supp. 2d 399, 411 (S.D.N.Y. 2011) (citing Credit Lyonnais Sec. (USA) v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." Lopez v. Emerald Staffing, Inc., No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *5 (S.D.N.Y. Feb. 26, 2020). The evidence the plaintiff submits must be admissible. See Poulos v. City of New York,

No. 14 Civ. 3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see also House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("damages must be based on admissible evidence").  If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing.  Fustok v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (noting that a court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment").

Ultimately, the default judgment the court enters "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c); see Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007) (limiting damages to those specified in the pleadings "ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer"); Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, No. 16 Civ. 1318 (GBD) (BCM), 2018 WL 4760345, at *1 (S.D.N.Y. Sept. 28, 2018) (holding that plaintiff could not recover damages for unalleged claims against defaulted defendant).

B. **Application**

Because Judge Liman has already determined Defendants' liability, we are tasked only with determining whether Assure has provided sufficient evidence to support its requests for damages, costs, and fees.  See Transatlantic Marine, 109 F.3d at 111; Bleecker v. Zetian Sys., Inc.,

7

No. 12 Civ. 2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013). In support of the Damages Submission, Assure has submitted the Bove Declaration (ECF No. 85-1), invoices for service of process (ECF No. 85-3 – 85-4), attorney billing records (ECF No. 85-5) and the Second Bove Declaration. (ECF No. 90).

### 1. Breach of Contract Damages

Assure asserts that it is entitled to $87,871.63 in damages arising from Defendants' breach. (See ECF Nos. 85-1 ¶ 39; 90 ¶ 39). This amount consists of: (1) $57,501.63—that is, $65,000.00 less the $7,498.37 Assure was able to resell—for "merchandise not received"; (2) $28,800.00 paid to a third-party to purchase, or "cover", the 160,000 gloves that Defendants never delivered; (3) $720.00 in overtime labor charges Assure accrued investigating the quantity and quality of the gloves Assure received; and (4) $850.00 in additional third-party shipping costs for the replacement gloves. (See id.). As explained below, Assure has not sufficiently demonstrated that it is entitled to any of these requested damages.

### a. Legal Standard

"Under New York law, damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." LG Cap. Funding, LLC v. Cardiogenics Holdings, Inc., 787 F. App'x 2, 3 (2d Cir. 2019); accord Assure Global, 763 F. Supp. 3d at 488; see also Topps Co., Inc. v. Cadbury Stani S.A.I.C., 380 F. Supp. 2d 250, 261 (S.D.N.Y. 2005) (damages for breach of contract may not "put the non-breaching party in a better financial position than they would have occupied but for the breach"). "It is well settled that in breach of contract actions the nonbreaching party may recover general damages which are the natural and probable consequence of the breach." Bi-Econ. Mkt., Inc. v.

Harleysville Ins. Co. of N.Y., 886 N.E.2d 127, 130 (N.Y. 2008). "Special, or consequential damages, which do not so directly flow from the breach, are also recoverable in limited circumstances." Id. "'Special' or 'consequential' damages . . . seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach." Schonfeld v. Hilliard, 218 F.3d 164, 176 (2d Cir. 2000).

### b. Application

#### i. Damages for missing gloves

We first address Assure's request for a damages award of $57,501.63 "for merchandise not received[,]" i.e., the missing gloves. (See ECF Nos. 85 at 8; 85-1 ¶ 39; 90 ¶ 39). As to this request, as Judge Liman observed, it appears that Assure seeks compensation for more than just the merchandise it did not receive. Assure Global, 763 F. Supp. 3d at 489. Indeed, the amount that Assure requests amounts to the entire value of the $65,000.00 contract, less the $7,498.37 worth of gloves it resold. (ECF Nos. 85 ¶ 21; 85-1 ¶ 26; 90 ¶ 30). As Judge Liman also observed, where "a buyer has accepted nonconforming goods, damages equal to the difference between the value of the goods accepted and the value of the goods as warranted is an appropriate remedy under the UCC." Assure Global, 763 F. Supp. 3d at 489 (quoting B. Milligan Contracting Inc., v. Andrew R. Mancini Assocs. Inc., 174 A.D.2d 136, 139 (3d Dep't 1992)). Here, however, "[i]nstead of following this formulation, [Assure] seems to assert it should receive back the full price it paid for all of the gloves it did not receive and of the inferior gloves it received and failed to resell, without accounting for any of the value of the inferior gloves it accepted but failed to resell. Indeed, [Assure] advances no evidence at all as to the market values of either the 5-

millimeter-thick gloves it received or the six-millimeter gloves for which it contracted." Id. (emphasis added).

Assure addresses—or rather attempts to address—this point in the Damages Submission, acknowledging Judge Liman's analysis but arguing that "[t]here is no market for non-conforming gloves[,]" which it deems "worthless." (ECF No. 85-1 ¶ 35). Furthermore, in the Second Bove Declaration, Assure declares—without citation to any documentary support—that "[n]one of Assure Global's customers were interested in gloves that were 5 mil, and there was no demand for the non-conforming gloves" (ECF No. 90 ¶ 30). These two assertions represent the entirety of the evidence Assure has submitted as to the value of the nonconforming gloves, a perfunctory showing that is insufficient to establish with reasonable certainty the value, or the alleged lack of value, of the nonconforming gloves. See, e.g., Agbaje v. Bah, No. 09 Civ. 6201 (DLC) (RLE), 2010 WL 6370541, at *5 (S.D.N.Y. Dec. 23, 2010) ("[E]ven if Agabje's Affidavit were sufficient to establish that the goods were actually consigned, Agbaje has provided no evidence to establish with reasonable certainty the value of the luggage, building materials and personal effects. Accordingly, the Court recommends that Agbaje receive no damages for the alleged loss of luggage, building materials and personal effects."); Roethlisberger v. Oxido Corp., No. 20 Civ. 1909 (PGG) (DF), 2021 WL 5772038, at *3 (S.D.N.Y. Dec. 6, 2021) (finding in inquest regarding copyright claims that "Plaintiff's submission of a single screenshot from the Getty Website and his attorney's barely explanatory Declaration are insufficient to establish the reasonable license value of each of Plaintiff's [ ] copyrighted photographs").

Accordingly, because Assure has not established damages with reasonable certainty as to the missing gloves, we recommend that it receive no damages under this theory of recovery.

10

### ii. "Cover" damages

We next address Assure's request for a refund of the $28,800.00 it was required to spend to "cover" the 160,000 missing gloves that Defendants never delivered. (See ECF Nos. 85 at 8; 85-1 ¶ 39; 90 ¶ 39). As to this issue, Judge Liman rejected Assure's efforts to recoup the full amount it paid for cover because "[a] buyer may recover from the seller as damages the difference between the cost of cover and the contract price." Assure Global, 763 F. Supp. 3d at 489 (emphasis added; quoting N.Y. U.C.C. § 2.712)); see Ethereum Ventures LLC v. Chet Mining Co. LLC, No. 19 Civ. 7949 (LLS) (KHP), 2021 WL 9036270, at *4 (S.D.N.Y Oct. 20, 2021) (explaining that "cover damages allow a frustrated buyer to 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller"). Because Assure paid five cents more per replacement glove than it did to Axxeum, Judge Liman found that Assure could recover $8,000.00—the difference between the cost of cover and the contract price—not $20,800.00. Assure Global, 763 F. Supp. 3d at 489. He further found that, in seeking the full cover figure, Assure was double-count[ing]" damages because it had already paid Defendants $20,800.00 for the undelivered gloves and sought that amount in the first category of damages, which was the contract value minus what Assure resold. Id.

In the Damages Submission, Assure takes issue with Judge Liman's reasoning, arguing that "the $20,800 shortfall was in addition to the $57,501.[63] in bad gloves[.]" (ECF No. 85-1 ¶ 35 (emphasis in original)). Aside this statement, however, Assure provides no documentary support for its argument that it is entitled to $28,800 to cover the extra expense it incurred to cover the deficiency in the shipment. Even when provided a second opportunity to supplement the

11

Damages Submission, Assure yet again failed to provide documentary support or otherwise support this argument. (See ECF No. 90 ¶ 22).

We agree with Judge Liman that Assure could in theory recover $8,000 as the "cost of cover," but Assure has failed to meet its burden of providing evidentiary support for this amount. Although a court may determine damages in a default judgment from affidavits alone, the court must be able to establish a basis for the damages. Romero v. Floris Construction, Inc., No. 16 Civ. 4282 (PKC) (RLM), 2017 WL 5592681, at *3 (E.D.N.Y Nov. 20, 2017). Typically, an affidavit or declaration accompanied by corroborating documentation is sufficient. See, e.g. Time Inc. Retail v. Newsways Servs., Inc., No. 16 Civ. 9479 (VSB) (JLC), 2018 WL 316995, at *4 (S.D.N.Y. Jan. 8, 2018), adopted by, 2018 WL 2332067 (S.D.N.Y. May 22, 2018); Li & Fung (Trading) Ltd. v. Contemporary Streetwear, LLC, No. 11 Civ. 2022 (CM) (DCF), 2013 WL 3757080, at *6 (S.D.N.Y. June 6, 2013); Conceria Vignola SRL v. AXA Holdings, LLC, No. 09 Civ. 6684 (GBD) (DF), 2010 WL 3377476, at *3–4 (S.D.N.Y. Aug. 3, 2010).

Even after being granted two opportunities to provide the Court with documentary evidence to support its cover purchase, Assure has only offered the name of the vendors from which it purchased the replacement gloves—Bruche and Nachas Inc. and I. Halper Paper & Supplies Inc.—and the date of the purchases. (ECF No. 90 ¶ 22). It provides no evidence—such as an invoice, receipt, bill of lading, or other document—to show the price it paid for the replacement gloves. We are thus in the same position as we were before we received the Second Bove Declaration—uncertain of the details of the purchases made to the two vendors and, therefore, unable to determine "cover" damages with reasonable certainty. Assure's evidence is

insufficient to establish "cover" damages, and so we respectfully recommend that Assure not be awarded these damages.

### iii. Overtime Labor Damages

We turn next to Assure's request to recover $720.00 in "overtime labor as a result of the warehouse investigation of missing and defective items[.]" (ECF Nos. 85-1 ¶ 39; 90 ¶ 39). Although increased labor costs are a recognized form of consequential damages, see, e.g., Mongiello's Italian Cheese Specialties, Inc. v. Euro Foods Inc., No. 14 Civ. 2902 (DF), 2018 WL 4278284, at *44 (S.D.N.Y. Mar. 30, 2018) (assessing increased labor costs within the broader category of consequential damages), Assure has not offered sufficient proof to establish with reasonable certainty that it incurred these damages. It offers no receipts or payroll records to verify the number of employees who worked on the warehouse investigation, the dates on which they worked, their rate of pay, and the number of hours they incurred. Assure has again failed to provide the "detailed affidavits or documentary evidence" on which we could find a basis for this category of damages. See Fustok, 873 F.2d at 40. Accordingly, we respectfully recommend that Assure's request for overtime labor damages be denied.

### iv. Additional Shipping Damages

Finally, Assure requests to recover $850.00 in "additional third[-]party shipping costs as a result of the missing and defective items[.]" (ECF Nos. 85-1 ¶ 39; 90 ¶ 39). Once more, we find that, although additional shipping costs incurred as a result of a breach of contract can constitute consequential damages, see, e.g., Qwik-Cook, Inc. v. Birddog Sols., Inc., No. 09 Civ. 6278 (MAT), 2009 WL 3296132, at *4 (W.D.N.Y. Oct. 9, 2009) (stating that additional "operational costs for the additional shipping and handling services needed" after a contractual breach "can clearly be

categorized as an item of consequential damages."), Assure has failed to offer evidence to establish with reasonable certainty that they incurred these damages.

In support of its request, Assure points us to Exhibit 7 of the SAC. (See ECF Nos. 85-1 ¶ 29; 90 ¶ 32). The referenced document is an invoice for a shipment to be made from "CINTAS" in Philadelphia to "SMART WAREHOUSING" in Allentown "[o]n 11/25/2020[.]" (ECF No. 74-7 at 1). Appended to the invoice is an email from Mr. Paul, an Assure employee or associate, to Jaime DePena, a Whitehorse Freight employee, requesting that Whitehorse pick up "5 pallets of gloves" from a Cintas location in Philadelphia. (Id. at 2). We have cross-referenced these documents with the Group Chat and conclude that the shipment to which they refer was the original defective shipment carrying the nonconforming gloves that was missing 160,000 items. (See ECF No. 74-1 at 2 (showing Mr. Sinensky directing Mr. Paul to facilitate shipment of the gloves)).

Nevertheless, Assure has not shown—for example by providing an invoice or accounting entry—that it incurred "additional third[-]party shipping costs as a result of the missing and defective items[.]" (ECF Nos. 85-1 ¶ 39; 90 ¶ 39). Accordingly, we respectfully recommend that Assure's request for additional shipping damages of $850.00 be denied. See Euceda v. Preesha Operating Corp., No. 14 Civ. 3143 (ADS) (SIL), 2017 WL 3084490, at *4 (E.D.N.Y. June 30, 2017) ("In the absence of adequate substantiation, a party is not entitled to recover costs.").

### 2. Interest

Assure requests in both the SAC, Damages Submission, and Second Bove, Declaration that it be granted interest. (See ECF Nos. 74 ¶¶ 52, 58, 65, 71, 77, 84, 105; 85-1 ¶ 39, 90 ¶ 39). It does not specify the type of interest it seeks; nonetheless, it is not entitled to any interest.

In New York, "[a] plaintiff who prevails on a claim for breach of contract is entitled to pre-judgment interest as a matter of right." Hounddog Prods., L.L.C. v. Empire Film Grp., Inc., 826 F. Supp. 2d 619, 630 (S.D.N.Y. 2011) (citing U.S. Naval Inst. v. Charter Commc'ns, Inc., 936 F.2d 692, 698 (2d Cir. 1991)).  "The intent of awarding prejudgment interest under CPLR § 5001 is to compensate an aggrieved party for damages due to the loss of the use of money or its equivalent, or a loss of the opportunity to realize a fair return on that money." McCoy v. Goldberg, 810 F. Supp. 539, 547 (S.D.N.Y. 1993).  Post-judgment interest is also mandatory. See Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008); see also Burns v. Scott, 635 F. Supp. 3d 258, 283 (S.D.N.Y. 2022).

Here, because we recommend that no damages be awarded, no interest is warranted.

### 3. Attorneys' Fees

As Judge Liman explicitly observed in the Jan. 16 Order, attorneys' fees are not available as to breach of contract claims "except where expressly provided by statue or contract." Assure Global, 763 F. Supp. 3d at 489–90  (citing Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc., 420 F. Supp. 2d 223, 227 (S.D.N.Y. 2005)).  Despite this clear guidance, in the Damages Submission, Assure renewed its request for attorneys' fees without identifying any statute or contractual provision in support of its request.  (See ECF Nos. 85 at 8; 85-1 ¶ 39).  In the Second Bove Declaration, however, Assure removed its request for attorneys' fees. (See ECF No. 90). Assure is deemed to have waived its request for attorneys' fees, see Wood v. Milyard, 566 U.S. 463 at 474 (2012), and, accordingly, we respectfully recommend that no attorneys' fees be awarded.

### 4. Costs

Finally, we arrive at Assure's request to recover costs. Federal Rule of Civil Procedure 54 provides that, "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Here, Assure requests reimbursement of: (1) the court filing fee ($402.00); and (2) service of process costs ($706.10). (ECF Nos. 85 at 8; 85-1 ¶ 39; 90 ¶ 39). We will award costs only where a party adequately substantiates them. See Sanchez v. Jyp Foods Inc., No. 16 Civ. 4472 (JLC), 2018 WL 4502008, at *17 (S.D.N.Y. Sept. 20, 2018) (noting that adequate substantiation is required for award of costs); Euceda v. Preesha Oper. Corp., No. 14 Civ. 3143 (ADS) (SIL), 2017 WL 3084490, at *4 (E.D.N.Y. June 30, 2017) (recommending denial of costs where "Plaintiff [] failed to provide any substantiation, such as invoices or receipts, documenting the costs he [sought] to recover").

First, Assure is a "prevailing party" under Rule 54(d)(1), given Judge Liman's finding that Defendants were liable for breach of contract. See Assure Global, 763 F. Supp. 3d at 484-88. Second, because we may take judicial notice of payment of filing fees, see, e.g., Sevilla v. Nekasa Inc., No. 16 Civ. 2368 (AJP), 2017 WL 1185572, at *8 (S.D.N.Y. Mar. 30, 2017), we find that Assure is entitled to recover the $402.00 filing fee paid in this action. We also find that Assure has provided adequate documentation for, and therefore may recover, the $706.10 it spent effecting service on Defendants. (See ECF Nos. 85-3 ($576.50); 85-4 ($129.60)).

Accordingly, we respectfully recommend that Assure be awarded $1,108.10 in costs.

## IV. CONCLUSION

For the reasons set forth above, we respectfully recommend that Assure be awarded no damages, but that it be awarded costs in the amount of $1,108.10.

Dated:   New York, New York
         June 2, 2025

_____
SARAH L. CAVE
United States Magistrate Judge

\*           \*           \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Liman.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).